UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 3:11-CR-00373-FDW-SCR

| UNITED STATES OF AMERICA | ) |  |
|---|---|---|
| v. | ) | **ORDER** |
| KAMAL ZAKI QAZAH, | ) |  |
| Defendant. | ) |  |

**THIS MATTER** is before the Court on Defendant's Motion for Compassionate Release, (Doc. No. 667). This matter has been fully briefed, (Doc. Nos. 669, 671), and is ripe for ruling. For the reasons set forth below, Defendant's Motion is **DENIED**.

### I. BACKGROUND

From 2009 to 2011, Defendant and his co-conspirators conspired to receive and sell more than 8,100 master-cases of Marlboro cigarettes that had been stolen or fraudulently procured. (Doc. No. 414, ¶¶ 25, 28.) Defendant was a leader and wholesale purchaser of cigarettes he believed to be stolen or fraudulently procured. (Id., ¶ 28.) Between March of 2010 and November of 2011, he was involved in twenty transactions cumulatively involving more than 8,000 master-cases. (Id.) Defendant also laundered $275,000 of proceeds related to an additional 91 master-cases. (Id.)

A federal grand jury indicted Defendant and charged him with conspiracy to commit offenses against the United States, including the interstate transportation of stolen goods and receiving property stolen in interstate commerce, all in violation of 18 U.S.C. § 371; three counts of receiving stolen property, 18 U.S.C. § 2315; two counts of interstate transportation of stolen goods, 18 U.S.C. § 2314; conspiracy to launder proceeds of specified unlawful activity and to engage in monetary transactions exceeding a value of $10,000 with proceeds of specified unlawful

1

activity, 18 U.S.C. § 1956(h); and two counts of money laundering, 18 U.S.C. § 1956(a)(3). (Doc. No. 245.) During his initial appearance before Magistrate Judge David S. Cayer, this Court questioned Defendant about his assets in response to Defendant's request for court-appointed counsel, and Defendant willfully omitted his possession of $70,000 of cash he had hidden in a car at his place of business. (Doc. No. 414, ¶ 43.)

A jury found Defendant guilty of conspiracy to commit offenses against the United States, including receiving or selling stolen property and transporting property stolen in interstate commerce. (Doc. No. 272, p. 1.) The jury also found Defendant guilty of one count of receiving or selling property stolen in interstate commerce and of each of the charged money-laundering offenses. (Id. at 2–3.)

This Court's probation office submitted a presentence report and began with a base offense level of 30 under the money-laundering guideline, United States Sentencing Guidelines Manual § 2B1.1. (Doc. 414, ¶ 47.) That base offense level included a two-level enhancement for being in the business of receiving and/or selling stolen property. (Id.) The probation office also added two offense levels because Defendant was convicted under 18 U.S.C. § 1956, two offense levels because Defendant used businesses as nominees to launder proceeds of the conspiracy, two offense levels because Defendant obstructed justice when he lied to this Court during his initial appearance, and four offense levels because Defendant was an organizer or leader of criminal activity involving five or more participants. (Id., ¶¶ 48–49, 51–52.) Based on a total offense level of 40 and a criminal-history category of I, the Sentencing Guidelines advised a sentence of between 292 and 365 months in prison. (Id., ¶ 76.) This Court concluded that the appropriate total offense level was 38, resulting in a Guidelines Range of 235 to 293 months. This Court varied downward and sentenced Defendant to 216 months in prison. (Doc. No. 553, p. 2.) Defendant appealed, and

the Fourth Circuit vacated his sentence and remanded for this Court to reconsider its loss determination. United States v. Qazah, 810 F.3d 879, 890 (4th Cir. 2015). On remand, the United States and Defendant jointly stipulated to a loss amount of approximately $7 million. (Doc. No. 624, p. 9.) This Court reduced Defendant's sentence to 172 months in prison. (Doc. No. 609, p. 2.)

In May of 2017, Defendant escaped from his Bureau of Prisons facility. (Doc Nos. 635, 636.) He was apprehended 19 days later in Mexico City, Mexico, carrying cash, a forged Yemeni passport, and civilian clothing. (Doc. No. 667, p. 4; Doc. No. 669, p. 3.) That escape ultimately resulted in Defendant's conviction for escape and conspiracy to escape, and he was sentenced in the Western District of Virginia to a consecutive term of 60 months in prison. United States v. Qazah, Case No. 2:17CR14, Doc. No. 43 (W.D. Va. Nov. 28, 2017).

In April of 2021, Defendant filed a *pro se* motion for compassionate release after seeking home confinement under the CARES Act. (Doc. No. 658; Doc. No. 660, p. 4.) He asked this Court to reduce his sentence because he had health conditions that created a risk that he would suffer serious health consequences if he contracted COVID-19. (Doc. No. 658, p. 2–3.) Defendant also asserted that he was a non-violent offender whose attorney gave him bad advice to go to trial and that his family needed him. (Id. at 3–5.) The United States filed a response to Defendant's motion, (Doc. No. 660), and Defendant filed a reply, (Doc. No. 661.) Two years later, in May of 2023, this Court granted Defendant's motion for leave to file an amended motion for compassionate release. (Doc. Nos. 665, 666.) Defendant then filed a counseled motion for compassionate release. (Doc. No. 667.)

In addition to receiving a disciplinary citation for escape while serving his sentence, Defendant also received a citation for possessing a hazardous tool in 2022. (Doc. No. 669-1.) Defendant has completed 30 educational courses or work assignments, including obtaining his

3

GED while in the custody of the Bureau of Prisons. (Id.) As of June 2023, Defendant was credited with having served 125 months of his amended 172-month sentence. (Id.)

## II.  STANDARD OF REVIEW

Defendant's motion seeks a reduction in his sentence in this case pursuant to 18 U.S.C. § 3582(c)(1)(A). A defendant may seek a modification of his sentence from the court under § 3582(c)(1)(A) for "extraordinary and compelling reasons" if the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." If a defendant has administratively exhausted a claim for release (or the Government does not contest the exhaustion requirement),[1] the district court generally conducts a two-step inquiry when deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A). United States v. Bond, 56 F.4th 381, 383 (4th Cir. 2023).

First, the court determines whether the defendant is eligible for a sentence reduction. "A defendant is eligible if the court finds 'extraordinary and compelling reasons warrant such a reduction,'" id. (quoting § 3582(c)(1)A)), and the reduction is "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). In 2023, the United States Sentencing Commission amended its policy statement to apply to defendant-filed motions for compassionate release, as permitted under the First Step Act of 2018, and expanded the list of circumstances sufficient to support such a motion under § 3582(c)(1)(A). See United States Sent'g Guidelines § 1B1.13. The amendments became effective on November 1, 2023. Id. They supersede much of the case law that developed over the past several years while there was no policy statement applicable to defendant-filed motions. See United States v. McCoy, 981 F.3d

---

[1] United States v. Muhammad, 16 F.4th 126, 130 (4th Cir. 2021) (recognizing the exhaustion requirement in § 3582(c)(1)(A) is not jurisdictional, and it may be waived or forfeited).

4

271, 283 (4th Cir. 2020). However, while drafting the new policy statement, the Sentencing Commission considered case law that developed after the enactment of the First Step Act in the absence of a binding policy statement. United States Sent'g Guidelines Manual § 1B1.13 amend. 814 (Supp. to App. C 2023) (discussing Amendment 814 in light of the Supreme Court's decision in Concepcion v. United States, 142 S. Ct. 2389 (2022)).

The policy statement now in effect authorizes a finding of extraordinary and compelling reasons for relief under § 3582(c)(1)(A) where, as relevant here: (a) the defendant is serving an unusually long sentence; (b) the defendant has served at least 10 years of the sentence; and (c) an intervening change in law has produced a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed. United States Sent'g Guidelines § 1B1.13(b)(6). An intervening change in law, other than an amendment to the Guidelines Manual that is not explicitly retroactive, can be considered even if that change is not retroactive. Id. Amendment 814 itself is not retroactive, and Defendant filed his Motion before the amendment became effective. However, Defendant raised the then-forthcoming amendment in his reply, (Doc. No. 671, p. 2), and this Court will evaluate the Motion under the current policy statement.

"Second, the court considers 'the factors set forth in section 3553(a) to the extent that they are applicable.'" Bond, 56 F.4th at 384 (quoting 18 U.S.C. § 3582(c)(1)(A)) (citing United States v. Kibble, 992 F.3d 326, 331 (4th Cir. 2021). Section 3553(a) requires the court to "impose a sentence sufficient, but not greater than necessary" to comply with the basic aims of the statute. In considering whether a reduced sentence is warranted given the applicable § 3553(a) factors, the court considers, among others: "the nature and circumstances of the offense;" "the history and characteristics of the defendant;" the need for the sentence to "provide just punishment," "afford adequate deterrence," "protect the public," and "provide the defendant with needed education or

vocational training, medical care, or other correctional treatment in the most effective manner;" the kinds of sentences available and sentencing ranges; and "the need to avoid unwarranted sentence disparities." 18 U.S.C. § 3553(a). Notwithstanding the existence of "extraordinary and compelling reasons," the court retains the discretion to deny a defendant's motion after balancing the applicable 18 U.S.C. § 3553(a) factors. United States v. High, 997 F.3d 181, 186 (4th Cir. 2021) ("if a court finds that a defendant has demonstrated extraordinary and compelling reasons, it is still not required to grant the defendant's motion for a sentence reduction.").

The Government does not contest that Defendant exhausted his administrative remedies. (Doc. No. 669). Thus, the Court's analysis turns to whether Defendant presents extraordinary and compelling reasons supporting his release or a sentence reduction in light of the applicable § 3553(a) factors.

### III. ANALYSIS

Defendant contends that three "extraordinary and compelling" reasons warrant compassionate release in this case: (1) evolving changes in law regarding the United States Sentencing Guidelines definition of "loss amount" affect the length of the sentence he would receive if he were sentenced today; (2) ineffective assistance of trial counsel; and (3) sentencing disparities between himself and his co-Defendants. Defendant further argues the § 3553(a) factors counsel in favor of a reduced sentence and compassionate release given his family obligations and the non-violent nature of the conduct underlying his convictions. In opposition, the Government argues a motion for compassionate release is not the appropriate vehicle for Defendant to attack the validity of his sentence or conviction. Even if compassionate release is the appropriate vehicle to raise these issues, the Government argues, the sentencing factors described in § 3553(a) do not support the relief Defendant seeks—a reduction of his sentence and release to home confinement.

6

Defendant's first argument is, in essence, that the length of his sentence warrants a reduction. In support of this argument, Defendant points to the Supreme Court's decision in Kisor v. Wilkie holding courts should not defer to an agency's interpretation of its own rules "unless the regulation is genuinely ambiguous . . . after exhausting all the traditional tools of construction." 139 S. Ct. 2400, 2415 (2019). Then, Defendant cites United States v. Banks, where the Third Circuit—relying on Kisor—held the plain meaning of "loss" in Sentencing Guideline § 2B1.1 does not include "intended loss." 55 F.4th 246, 257–58 (3d Cir. 2022). For that reason, the Third Circuit concluded the language in Application Note 3(A) to § 2B1.1 authorizing a sentence based on "intended loss" contradicts the plain language of the Guideline itself and is invalid. Id. at 258. Defendant urges this Court to follow the Third Circuit's lead in Banks. Following Banks and relying on an actual loss amount of zero in this case, Defendant argues, would result in a Guidelines Range of 27 to 33 months. In opposition, the Government argues Defendant cannot challenge his guideline range through a compassionate release motion under § 3582.

To the extent Defendant's motion challenges the lawfulness of his prior sentence, Fourth Circuit precedent requires this Court to reject his argument. Compassionate release cannot be used to make a collateral attack on the lawfulness of a previously imposed sentence. United States v. Ferguson, 55 F.4th 262, 269–270 (4th Cir. 2022). The proper method to challenge the lawfulness of a sentence is under 28 U.S.C. § 2255. As the Ferguson court observed, "[b]ecause § 2255 is the exclusive method of collaterally attacking a federal conviction or sentence, a criminal defendant is foreclosed from the use of another mechanism, such as compassionate release, to sidestep § 2255 requirements." Id. at 270 (emphasis added). Consequently, Defendant's efforts to utilize compassionate release to challenge the lawfulness of his previously imposed sentence is improper.

Instead, the Court considers Defendant's argument as a basis to reduce his legally valid sentence based on an alleged difference in penalties from the time he was sentenced and now. Concepcion, 142 S. Ct. at 2396. Amendment 814 to the Guidelines also appears to permit Defendant's argument. See U.S.S.G. § 1B1.13(b)(6). Construing Defendant's argument as appropriate under § 3582(c)(1)(A), the Court looks to the Sentencing Commission's policy statement. U.S. Sent'g Guidelines § 1B1.13(b)(6). Assuming Defendant's sentence is "unusually long," see id., as of June 2023 he was credited with serving 125 months of that sentence (more than ten years). He must still show that an intervening change in law has created a "gross disparity" between his sentence and the sentence likely to be imposed today. Id. He has not done so.

Defendant's argument hinges on an unsettled area of law. In the Fourth Circuit, there is an intra-Circuit split concerning whether, in light of Kisor, the Sentencing Commission's Commentary to the Guidelines is binding even where the Guidelines themselves are unambiguous. Compare United States v. Campbell, 22 F. 4th 438, 444 (4th Cir. 2022), with United States v. Moses, 23 F. 4th 347, 356 (4th Cir. 2022). And the Fourth Circuit declined to follow the Third Circuit's decision in Banks in United States v. Limbaugh, upholding on direct appeal a defendant's sentence calculated based on "intended loss." Case No. 6:20-cr-00465-HMH-1, 2023 WL 119577, at *4 (4th Cir. Jan. 6, 2023). For these reasons, Defendant cannot show a "gross disparity" between the sentence he is serving and the sentence he would receive if he were sentenced today. Even assuming, as Defendant argues, there was no actual loss here, "intended loss" remains a valid means of determining a sentence under § 2B1.1 in this Circuit.

Defendant's second argument asks this Court to consider alleged ineffective assistance of trial counsel as grounds for compassionate release. According to Defendant, trial counsel should have objected to the loss calculation in the presentence report on the grounds that no party suffered

a loss, and costs to the government are to be excluded from the loss determination. The Government again argues that Defendant cannot raise this issue in a compassionate release motion under § 3582. The Court agrees. Section 2255 is the proper and "exclusive" vehicle to attack a defendant's conviction or sentence based on ineffective assistance of counsel. See Ferguson, 55 F. 4th at 270–71 (citing 28 U.S.C. § 2255); United States v. Franks, No. 3:17-cr-174-MOC-DCK-1, 2023 WL 3959391, at *3 (W.D.N.C. June 9, 2023).

Third, Defendant argues the disparity between his sentence and that of his co-Defendants is an "extraordinary and compelling" circumstance that warrants compassionate release or a reduction in his sentence. In support of this argument Defendant compares his sentence to that of his co-Defendant and uncle, Nasser Kamal Alquza, who he identifies as the "next culpable co-defendant." (Doc. No. 667, p. 19.) This Court sentenced Alquza to a term of imprisonment of 87 months. (Doc. No. 611.) The Fourth Circuit has recognized that sentencing disparities may constitute an extraordinary and compelling reason for relief under § 3582(c)(1)(A). McCoy, 981 F.3d at 285. However, the sentencing disparities discussed in McCoy were a result of statutory changes during the defendant's term of incarceration, not a disparate sentence among co-defendants. Id. And the new policy statement does not address sentencing disparities among co-defendants. See U.S.S.G. § 1.13(b). Defendant also fails to identify any extraordinary or compelling reason why the sentencing disparity between himself and Alquza warrants relief. Indeed, the record indicates Defendant was more involved in the cigarette scheme than Alquza, was involved for a longer time period, and recruited his uncle Alquza into the scheme. (Doc. No. 414, ¶ 28.) In sum, there is a disparity, but it is not unwarranted.

Even if Defendant has shown extraordinary and compelling reasons support the relief he seeks, the § 3553(a) factors do not support a sentence reduction. The need to reflect the seriousness

9

of the offense weighs against a sentence reduction. While not violent, Defendant was arrested for running a years-long, sophisticated scheme to obtain and sell cigarettes for a large profit. The history and characteristics of the Defendant similarly weigh against a sentence reduction. The Court appreciates that while in custody Defendant has participated in educational programs, that he has a release plan, and that he wishes to return home to his wife and minor children. However, his conviction for escape while serving his sentence in this case is a serious offense that demonstrates disregard for the law. And he committed another infraction as recently as 2022. Finally, contrary to Defendant's assertion, the need to avoid unwarranted sentencing disparities does not weigh in favor of a reduction. "Section 3553(a)(6) is aimed primarily at eliminating national sentencing inequity, not differences between the sentences of co-conspirators." United States v. Smith, 836 F. App'x 149, 152–53 (4th Cir. 2020) (citing United States v. Withers, 100 F.3d 1142, 1149 (4th Cir. 1996)). For the foregoing reasons, the § 3553(a) factors do not support a reduction of Defendant's sentence.

    **IT IS THEREFORE ORDERED** that Defendant's Motion for Compassionate Release, (Doc. No. 667), is **DENIED** without prejudice.

    **IT IS SO ORDERED.**

Signed: February 12, 2024

_____
Frank D. Whitney
United States District Judge